

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br>RONESSA NAOMI CAMPOGAN and ZACHARY NEAL CAMPOGAN,<br>　　　　　　　　Debtors. | Case No. 18-00007<br>Chapter 7 |
| TROY WURTZ, WENDY UMIPEG-WURTZ, and WENDY UMIPEG-WURTZ AS REPRESENTATIVE OF THE ESTATE OF ZOE WURTZ,<br>　　　　　　　　Plaintiffs,<br>　vs.<br>RONESSA NAOMI CAMPOGAN and ZACHARY NEAL CAMPOGAN,<br>　　　　　　　　Defendants. | Adv. Pro. No. 18-90011<br><br>Related: Dkt. 1 |

### MEMORANDUM OF DECISION AFTER TRIAL
### ON "WILLFUL AND MALICIOUS INJURY"

This case arises out of the tragic death of a seven-month-old baby girl while she was at day care. It is the worst nightmare of any parent, and the worst nightmare of any caregiver. The issue before me is whether the caregiver's debt to the parents and the estate of the baby girl is dischargeable in bankruptcy.

This adversary proceeding was tried on September 17, 2019. William N. Ota, Esq. and Leighton M. Hara, Esq. represented the plaintiffs. Robert K. Matsumoto, Esq. represented the defendants.

Many of the facts are undisputed. Defendant Ronessa Naomi Campogan was a licensed child care provider who cared for children in her home. She had a contract with plaintiffs Troy Wurtz and Wendy Umipeg-Wurtz to care for the Wurtzes' infant daughter, Zoe Wurtz. The contract required Ms. Campogan to adhere to safe sleep guidelines.

On July 21, 2015, Ms. Campogan fed Zoe, burped her, and placed her in a car seat with a blanket under her and a pillow on her lap. Zoe fell asleep in the car seat. Because the other children in Ms. Campogan's care were noisy that day, Ms. Campogan placed Zoe, who was asleep in the car seat, in a bedroom occupied by Ms. Campogan's daughter. Ms. Campogan then attended to the other children in the living room. Ms. Campogan testified that, even though Zoe was in the bedroom, the infant was always within her vision and hearing. However, based upon the layout of the home and the din of the other children, it is not likely that Ms. Campogan

2

U.S. Bankruptcy Court - Hawaii   #18-90011   Dkt # 45   Filed   09/19/19   Page 2 of 6

could always see and hear Zoe at every moment from the living room, through a partially opened bedroom door.

Allowing Zoe to sleep seated in a car seat, with a blanket behind her back and a pillow on her lap, in a warm bedroom, while Ms. Campogan was attending to other children in an adjacent room, was unsafe and did not comply with the safe sleep guidelines that Ms. Campogan had promised to follow. The evidence shows overwhelmingly that Ms. Campogan was generally an excellent, careful, and loving caregiver. However, on this occasion, her conduct fell short and her error resulted in the worst possible consequence.

After a time (the exact period is disputed), Ms. Campogan checked on Zoe and found that she was unresponsive and not breathing. She immediately began to administer CPR and called 911. The first responders took Zoe to an emergency room, but Zoe passed away. The cause of death was hyperthermia.

Ms. Campogan's negligence was undoubtedly a legal cause of Zoe's death. But to prevail in this adversary proceeding, the plaintiffs must prove more than negligence.

The discharge in a chapter 7 bankruptcy case protects the debtor from personal liability for all pre-bankruptcy debts, with certain exceptions enumerated in the Bankruptcy Code. The exceptions are interpreted strictly

U.S. Bankruptcy Court - Hawaii   #18-90011   Dkt # 45   Filed   09/19/19   Page 3 of 6

and narrowly in favor of the debtor.[1]

One of the exceptions is section 523(a)(6) of the Bankruptcy Code.[2] That section excepts from the discharge all debts that are "for willful and malicious injury by the debtor to another entity or to the property of another entity."[3]

The United States Supreme Court has held that injuries attributable to negligent or reckless conduct do not fall within the "willful and malicious injury" exception to discharge.[4] As the Court explained:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury."[5]

The Ninth Circuit Court of Appeals has further instructed that the willful injury requirement under section 523(a)(6) "is met only when the debtor has a subjective motive to inflict injury or when the debtor believes

---

[1] *See Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) (determining that broad construction of § 523(a) "would be incompatible with the 'well-known' guide that exceptions to discharge 'should be confined to those plainly expressed.'" (quoting *Gleason v. Thaw*, 236 U.S. 558, 562 (1915))).

[2] Count II of the adversary complaint.

[3] 11 U.S. C. § 523(a)(6).

[4] *Kawaauhau*, 523 U.S. at 59.

[5] *Id*. at 61.

4

U.S. Bankruptcy Court - Hawaii   #18-90011   Dkt # 45   Filed  09/19/19   Page 4 of 6

that injury is substantially certain to result from his own conduct."[6]

I am obligated to follow these decisions of the Supreme Court and the Ninth Circuit.

At the hearing on Ms. Campogan's motion for summary judgment, I held that there was no evidence that Ms. Campogan actually intended to hurt Zoe. By all accounts, Ms. Campogan is a loving caregiver. It is simply inconceivable that she meant to injure the baby.

After carefully considering all of the evidence, I find that the plaintiffs have failed to carry their burden of proving (by a preponderance of the evidence) that Ms. Campogan believed that Zoe was "substantially certain" to suffer injury as a result of Ms. Campogan's conduct. Ms. Campogan knew that the safe sleep guidelines were designed to reduce the risk of infant death. Therefore, she knew that her failure to comply with those guidelines increased the risk that Zoe faced. But it is one thing to know that the risk to Zoe increased; it is quite another to know that the risk had increased to the level of "substantial certainty." Ms. Campogan did not know that Zoe was "substantially certain" to die or be injured because of the conditions in which Ms. Campogan permitted her to sleep.

There is no evidence that defendant Zachary Neal Campogan, Ms. Campogan's husband, had any role in Ms. Campogan's child care business

---

[6] *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010) (citation omitted); *see also Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir. 2001).

U.S. Bankruptcy Court - Hawaii   #18-90011   Dkt # 45   Filed   09/19/19   Page 5 of 6

or any responsibility for Zoe's death. No evidence was presented at trial to show that he had the mental state required by section 523(a)(6).

Therefore, Mr. and Ms. Campogan are legally entitled to a discharge of their debt to the Wurtz family. Judgment will enter accordingly.

**END OF ORDER**